DORÉ, Judge.
This is an action by Mr. and Mrs. Daniel W. Abbott to recover damages for the death of their twenty year old son, D. W. Abbott, Jr., who was instantly killed when a truck in which he was riding collided with another truck. The plaintiffs sued James Spence, driver of the truck in which their son was riding, the Lumbermen’s Mutual Casualty Company, alleged to be the insurer of the truck in which their son was riding, Spencer Landry, John Daigle, driver and owner, respectively, of the other truck involved in the collision, and the Commercial Casualty Insurance Company, the property damage and public liability insurer of said truck.
*339 Before the trial of the case, the plaintiffs dismissed their suit as to the Lumbermen’s Mutual Casualty Company.
The lower court rendered judgment in favor of the plaintiffs, and against all remaining defendants, in solido, in the sum of Nine Thousand Five Hundred Ninety Eight and 62/100 ($9,598.62) Dollars, with legal interest thereon from date -of judicial demand until paid. From this judgment the defendants, Spencer Landry, John Daigle, and Commercial Casualty Insurance Company have perfected this appeal.
The evidence discloses that on August-25, 1948, at approximately 5 o’clock p. m. their son was riding as a guest in a 1948 GMC pick-up truck, owned by one Charles. J. Benoit. The driver of the truck was James Spence and attached to the rear of said truck was a two-wheel trailer bearing a light fishing boat. Occupying the truck with Spence was Charles J. Benoit, son of the owner of the truck who was seated just right to the driver in the center of the seat, and Abbott, the son of the plaintiffs, was seated next to Benoit on the extreme right side of the seat.
They were traveling in .a northerly direction on State Highway 105, a graveled highway, in Jefferson Davis Parish, approximately four miles south of the Town of Welsh.
Approaching from the opposite direction and going in a southerly direction was the Daigle truck, being driven at the time by his employee, Spencer Landry. It was a 1948 Model Chevrolet truck, equipped with a rice carrier bed or body some 7% feet wide.
There was a bridge located on said highway, and when Spence, the driver of the Benoit truck, saw the Daigle truck approaching said bridge from the opposite direction, he thereupon applied his brakes on the pick-up truck in order to slow ,it down or bring it to a stop. The truck, however, skidded in a northwesterly direction, on its left side of the highway and collided with the front end of the Daigle truck at a point several- feet south of the bridge and about three feet west of the center of said highway.
After the accident the Daigle truck came to rest with both front wheels in -or on the edge of the ditch on the west side of the highway, facing southwest, and with both rear wheels on the roadway. The Benoit truck came to rest facing substantially in the same direction, but it was located east of the Daigle truck, the front end of the Benoit truck being about three feet across, or west of the center line of the highway. The force of the impact caused Abbott to be thrown out of the Benoit truck, and to sustain the injuries which were the direct cause of his death that evening.
The highway at that point is a straight graveled road and at the time of the accident it was dry and in good condition. The bridge located near the. point of impact was a flat bridge sixteen ■ feet long and twenty feet wide. Gravel was heaped along the railings on each side of the bridg'd which reduced the actual traveling surface between the two railings to about 18 feet. The road surface of the highway a few feet north and south of the bridge was about 23 feet.
The lower court concluded that Spence, the driver of the Benoit truck in which the plaintiffs’ son was riding, was driving at a speed of 50 to 60 miles per hour immediately prior to the accident, that he was familiar with the road at the scene of the accident and knew or should have known that the bridge was located at that point, and further, that the bridge is plainly visible some distance away from it. It found that Spence was not keeping a proper lookout and was negligent in failing to observe the bridge sooner, in failing to bring his truck to a stop or to reduce its speed without losing control of it, and in thus failing to avoid the accident, and that his negligence in these respects was a proximate cause of the accident. The Court-further found that the decedent, Daniel W. Abbott, Jr., was not guilty of contributory negligence. As to, the other defendants,- namely, .Spencer Landry, the driver of the Chevrolet IV2 ton truck, Daigle, the owner of' said truck, and Commercial . Casualty Insurance Company, the insurer, the lower , Court also found them *340 liable in solido with the other defendant for the damages sustained by plaintiffs. It found that Spencer Landry, the driver of the truck, was guilty of negligence in creating an emergency by swerving too far to his left in the face of oncoming traffic as he crossed the bridge, and, second, in failing to apply his brakes and turn to his right within a reasonable time after he became aware of the emergency, which acts of negligence were also a proximate cause of the accident.
At the outset of this opinion, it might be well to point out that we find that the decedent, Daniel W. Abbot, Jr., was not guilty of contributory negligence. He was under no duty to keep his eyes on the road and to warn the driver of each obstacle as ■ they approached it.
As has been .noted, the defendant, James Spence, the driver of the truck in which, plaintiffs’ son was riding, did not perfect an appeal to this court, and the only question remaining to be decided is whether or not Spencer Landry, the driver of the Daigle truck, was guilty of any negligence which was a proximate cause of the accident. ■
The plaintiffs allege many acts of negligence on the part of the defendant Landry, which are as follows:
“(a) The failure of Spencer Landry to stay on the west half or his right side of the center line of said highway immediately before and on crossing said narrozv bridge under the facts and circumstances as alleged hereinabove.
“(b) The failure of Spencer Landry to keep a proper lookout for automobiles properly and legally proceeding in the opposite direction on said highway.
“(c) Of Spencer Landry in crossing the center line of said highway and entering the east half thereof in violation of the laws of the State of Louisiana, particularly at the time and place and under the circumstances alleged hereinabove in Paragraph XI.
“(d) The failure of Spencer Landry to observe and discover the perilous, dangerous and helpless' position of the Benoit truck, all of which a careful and prudent driver should have, and would have, discovered in ample time to have brought the Daigle truck to a stop and avoid the imminent collision.
“(e) Of Spencer Landry in driving the said Daigle truck heedlessly, recklessly and wantonly into the said Benoit truck at a time when it was in a perilous and helpless position.
“(f) The failure of the said Spencer Landry to have and keep the Daigle truck under proper control.”
These charges of negligence may be summed up in a complaint that the driver of the truck, Spencer Landry, was guilty of negligence in that he drove his truck across the center line of the highway and bridge, and thereafter did nothing to avoid the almost obvious collision with the other truck.
The defense is that Landry was driving thé Daigle truck on his own right side of the highway, at a speed of approximately 25 or 30 miles per hour, that he approached the bridge, drove across it, and beyond to the south, at all times remaining on his right side of the highway, never at any time crossing to his left or the wrong side of the highway, and that following the accident, the brakes on the truck were found to be locked and the steering wheel was pulled to the right.
As is usual in all collision cases, the testimony of the witnesses is conflicting.
Charles Benoit, son of the owner of the truck in which plaintiffs’ son was a guest, testified that the highway at that point was in good condition, and that Spence was driving the Benoit truck about 50 miles per hour immediately prior to the accident. Benoit noticed the Daigle truck when, the two vehicles were about three-quarters of a mile apart, but paid no further attention tó it at ’ that time. When they reached a point about 70 or 75 feet from the south edge of the bridge, however, Spence applied the brakes real hard, and Benoit then looked up and noticed the Daigle truck approaching them in the center of the bridge, the’ front end of the truck having traveled about one-half the length of the bridge. He testified that the right wheels of the Daigle truck were at least *341 four feet from the west railing of the bridge.
Spencer Landry testified that the bed of the Daigle truck was about 7% feet wide, that the road at the scene of the accident was rough, and that he was driving the Daigle truck in a southerly direction,- at a speed of about 25 or 30 miles per hour. He was driving on the extreme right-hand side of the road, and when he approached the bridge, he swerved to the east, or to his left, about a foot and a half or two feet in order to cross it. He stated that he was traveling in the tracks which run along the west side of the bridge, and that he did not cross the center of the highway at any time. The. west side of his truck, he testified, was about a foot and a half from the west banister or railing of the bridge. As he was crossing the bridge, he saw the Benoit truck begin to skid and sway toward him. He said he then applied his brakes and turned to the right in an unsuccessful effort to avoid a collision. He thought that the accident occurred at a point 45 or 50 feet south of the bridge. He stated the Daigle truck, which he was driving, at all times while crossing the bridge, was. near enough to the west railing to enable the Benoit truck to safely pass it on the east side.
John Daigle, owner of the Daigle truck, testified that he went to the scene pf the accident a few minutes after it occurred and determined by actual measurement that the impact occurred from 35 to 40 feet south of the bridge. He found that the brake pedal in his truck was jammed and the stop light was on.
The first question to be determined is whether or not the defendant Landry drove the Daigle truck over the center line of the highway. As noted, the witnesses who testified disagree as to whether the Daigle truck traversed the center of the highway. Landry did admit that he did swerve the truck one to one and one-half .feet toward the center of the highway, but he did this in order to follow the lanes of traffic across the bridge, and he did not traverse the center of the highway.
Our learned brother in the Court below concluded that Landry did swerve the Daigle truck toward the center of the highway but did not traverse the center of the" highway. Quoting from his. reasons for his judgment, it is found: “The Court-is convinced that Landry did cause his truck to swerve further to the left than was necessary in crossing the bridge, and his actions in doing so in the face of oncoming traffic constituted negligence on his part. Upon examining the photographs of the highway at the scene of the accident, which photographs were taken within one week after the accident occurred, it appears to this Court that it was not necessary for Landry to swerve his truck one and one-half or. two feet to his left in order to follow the well defined lanes ■ of traffic across the bridge. His testimony to the effect that he did so swerve to his-left, the testimony of Benoit to that effect, and the statements made by Spence to the insurance adjuster the day after the accident that he noticed the Daigle truck ‘pulling in a little toward the center of the road,’ and Spence’s statement to the Coroner’s Jury that he saw the truck ‘pull to the left (his left),’ -convinces the Court that Landry in crossing the bridge, did cause his truck to travel nearer the center of the highway than was necessary, arid since he saw the approaching vehicle he was careless in not remaining on the extreme west side of the bridge. By swerving to his left, Landry made i.t necessary, or at least made it so appear to Spence, for the Benoit truck to be brought to a sudden stop or to have its speed suddenly checked.” (Italics ours).
The photographs which the Court refers to, and which were introduced into the record jointly by plaintiffs and defendants, reveal that the bridge in question is slightly narrower than the road. The evidence disclosed that the road -was about twenty-three feet wide, and the bridge was twenty feet wide, but with a usable roadbed of eighteen feet. It is our opinion that Landry, the driver of the Daigle truck, had to swerve a little toward the center of the road in view of the fact that his truck bed was 7y% feet wide, for hadn’t he, the bed of the truck might have collided with the sides of the bridge. Landry’s side of the *342 highway as. it crossed the bridge, was reduced to nine feet, and since his truck was seven and one-half feet, he had to use all of the west side of the road on the bridge but one and three fourths feet. In swerving toward the center of the highway, he did just what any other driver of a large truck would have done in view of the circumstances, and Spence, the driver of the pick-up Benoit truck, being familiar with the road and the bridge, and, further, the bridge being visible, should have ascertained that the driver of the approaching truck would swerve a little toward the center of the bridge.
As mentioned heretofore, the testimony as to whether Spencer Landry, the driver of the Daigle truck, actually crossed the center' of the highway is conflicting. At the trial, Spence and Benoit testified that Landry had crossed the center of the highway. On August 26, 1948, Spence, when explaining the accident to an adjuster of the Lumbermen’s Mutual Casualty Insurance Company, which in plaintiffs’ original petition was alleged to have been the insurer of the Benoit truck, stated:
“I was driving along and we were listening to the radio in the pick up and talking. I observed a large truck approaching from the North and naturally pulled over to my side of the road. I saw this truck quite a distance and got right over on my side, but I did not slacken speed, as I did not' think that necessary. As I was almost meeting this truck, I noticed it pulling in a little toward the center of the road, and saw that his reason for doing so was to cross the culvert that I hadn’t seen up until then.” (Emphasis ours).
“I did not believe that both the trucks would be able to get on the culvert at the same:.time, and at our respective rate of speed I calculated that we would have to pass each other: on the culvert.”
In this statement, Spence did not state that the Daigle truck had traversed the center of the highway, but stated that he noticed the truck pulling in a “little toward the center of the road.” On the witness stand, he testified that Landry had swerved the Daigle truck some three or four feet over the center line, came on him while occupying that portion of the road. Further examining his statement, which was made shortly after the accident and to an adjuster whose position was not adverse to his, he in effect, stated that the reason he applied his brakes suddenly was because he figured both trucks would reach the bridge at the same time and would not have enought room to traverse same safely.
Young Benoit, the brother-in-law of Spence, and the son of the owner of the Benoit truck which Spence was driving, alsp gave a statement to the adjuster for the insurance company covering his father’s truck, which was introduced in evidence. In part, the statement read: “As to the collision, I do not know exactly what caused it, but I think that when James started to slow before meeting a truck approaching from the north, the trailer we were pulling must have caused our truck to veer toward the left and the two vehicles came together. Our pick-up-was still headed toward the left of the road when the collision occurred.”
The same boy, on the witness stand, testified that when he felt Spence apply the brakes to the pick-up truck, he looked up and saw the Daigle truck on the bridge, occupying the middle of the road, and approaching them in that position.
It is to be noted that these statements relative to the accident were made a short time after the accident when the collision was fresh in their minds, and were not given to an adjuster représentiñg hostile or adverse interest, but on the contrary, to the adjuster whose -company was or had been the insurer of the Benoit. truck. In view of these facts, we are of the opinion that the testimony of these witnesses at the trial should not be given too much weight. Surely, the adjuster of the insurance company would have brought in the statements the fact that the Daigle truck was 2, 3 or 4 feet over the center line of the highway. It would have been to his advantage to do so. Further,-Spence-gave the following at a coroner’s inquest á few days following the accident:' “I saw the truck pull to the left (his left) and realized the reason was to pass on a narrow culvert. At our respective speed we would have *343 both met on the culvert at the same time, which was too narrow for both trucks.” (Emphasis supplied.)
In the case of Campbell v. New Amsterdam Casualty Company, La.App., 39 So.2d 180, 181, this Court, in its opinion, stated: “The only other eye witness to the accident was one Dewey Brumfield, who was working close to the intersection of these two streets, and his testimony shows that the Ford car driven by O’Quinn, failed to stop at the intersection and was traveling at a rate of speed of thirty-five (35) to forty (40) miles per hour when it struck the Chevrolet automobile driven by Mr. Campbell. There is a statement in the record, which was signed by Dewey Brumfield and given to the Insurance Adjuster, to the •effect that he was not looking at the automobiles immediately prior to the accident, because he was engrossed in his work .and that the crash of the cars attracted his .attention. Of course, the testimony of Brumfield is at variance with the statement he gave to the Insurance Adjuster. If the ®rash of the two automobiles is what attracted his attention, he certainly could not have known the speed of the Ford automobile immediately prior to the accident, nor could he have known that the Ford car ran into the Chevrolet car.”
Considering the variance in the testimony of these two boys, and the photographs introduced in evidence which reveal distinct traffic lanes which are entirely on the west side on the road (the right side when vehicles are traveling in a southerly direction), it is hard to believe that Landry, the driver of the Daigle truck, ■would have traversed the center line of the highway. Furthermore, the photographs reveal that the east side of the road in question was a lot rougher than the west side of the road, and therefore, it is not probable that one would leave a smoother side of a road for a rougher side, especially in view that the rougher side was the wrong side and another vehicle was approaching from the opposite direction.
Assuming that Spencer, the driver of the Daigle truck, did cross the center of the road, say, one foot or one and one-half feet, it is our opinion that said action on his part still would not have been the proximate cause of the accident or one of the proximate causes thereof. We have seen that the bridge was some twenty feet wide and had a road bed of eighteen feet. ■ Had Landry been one foot over the center line, he would have been occupying ten feet of the road bed, leaving eight feet for the approaching pick-up truck being driven by Spence. Eight feet would have been ample room for the pick-up truck. Had Spence been driving at a reasonable rate of speed, or had he been keeping a proper lookout, or had he braked his vehicle slowly, the accident would not have occurred. This Court is of the opinion, that the speed at which Spence was driving on a rough graveled road with a trailer attached to the truck, and his failure to keep a proper lookout and the projection of his vehicle across the center of the highway unto the west side thereof, due to the skidding caused by the tardy application of his brakes or because of faulty brakes, was the •only proximate cause of the accident. It might have been that the young man’s excitement was occasioned by seeing the truck being driven by Landry pull toward’ the middle or center of the highway on what he thought to be a narrow bridge, when in fact, it was sufficiently wide to take care of both vehicles easily. Had he been keeping a proper lookout, he would not have erroneously concluded that the bridge was too narrow for both trucks to traverse it at the same time. If an emergency existed, it was of his own making.
The only remaining question is whether Landry, the driver of the Daigle truck, could have avoided the accident. Landry testified that he was driving the Daigle truck at a speed of 25 to 30 miles per hour just prior to the accident, and that he reduced his speed after he saw the Benoit truck skidding. He stated that he was traversing the bridge in question when he noticed the Benoit truck skidding, and at that time, the Benoit truck was approximately 60 feet away. Taking the position that Landry reduced his speed to 20 miles per hour, and the Benoit truck was skidding along at the rate of 40 miles per hour, which is more favorable to plaintiffs, we *344 would have a combined speed of 60 miles per hour, which is at a rate of 88 feet per second; so, we find that the two vehicles would cover the 60 feet that separated them, when danger first showed up in not more than % of a second. A man who has about three-quarters of a second to avoid an oncoming car does not have the time nor opportunity to do anything effective. It would have taken Landry 83 feet to come to a stop with his vehicle including reaction time, and the driver of the Benoit truck 132.8 feet. See Technical Data Department, Research Laboratories Division, General Motors Corp., reproduced Vol. 14, Tulane Law Review 493/503. Before Landry, the driver of the Daigle truck, would have reacted to the danger and peril of the oncoming truck, he would have traveled something like 17 feet. The accident was imminent once the Benoit truck started skidding down the center of the highway.
The lower Court found that the vehicle driven by Landry had traveled over 40 feet before reacting to the danger. This conclusion was drawn from the fact that skid marks were only visible some 18 inches north of the actual collision. However, if the ■ Daigle truck was traveling in the traffic lane on the west side of the road, it could be that the skid marks were not visible. But be that as it may, the accident would have occurred even if Landry had applied his brakes immediately upon seeing the Benoit truck skidding down the road. The lower Court stated that this was a matter of conjecture, and even though we feel constrained to disagree with our learned brother below, we feel that we must do so. The accident was imminent when the Benoit truck started skidding down the center of the road, and that fact, plus the fact that its driver was driving at an unreasonable rate of speed, and not keeping a proper lookout, was the sole proximate cause of the accident. The evidence discloses that Landry, the driver of the Daigle truck, had cut his truck as far to the right as possible without going into the west ditch. This was established by his own testimony and the testimony of the parties who came up after the accident «.nd found a short skid mark, the brakes locked and the wheels cut to the right, almost to the point of entrance in the ditch.
For the reasons assigned, the judgment appealed from is reversed in so far as defendants, Spencer Landry, John Daigle and Commercial Casualty Insurance Company, and it is now ordered that plaintiffs’ suit be and is hereby dismissed as to them at plaintiffs’ costs.